[Cite as *In re I.W.*, 2026-Ohio-2910.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: I.W.

C.A. No.     31830

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 24-10-00707

DECISION AND JOURNAL ENTRY

Dated: July 29, 2026

HENSAL, Presiding Judge.

{¶1}    Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her child in the permanent custody of Summit County Children Services Board ("CSB" or "the agency").  This Court affirms.

I.

{¶2}    Mother is the biological mother of I.W., born August 29, 2020.  The child's father did not participate in the case below and has not appealed.  Mother has a younger child, R.W., who is not a subject of this appeal, but whose circumstances are relevant.  The children have different fathers.

{¶3}    In September 2020, CSB obtained emergency temporary custody of I.W. when she was a newborn after Mother failed to visit the infant in the hospital for several days.  The agency filed a complaint alleging that I.W. was a dependent child based on concerns regarding Mother's ability to provide a safe and appropriate home for her.  The juvenile court adjudicated I.W. a

dependent child. The infant remained in the agency's temporary custody for eight months, during which time Mother worked towards reunification. The juvenile court ultimately returned I.W. to Mother's custody and closed the case.

{¶4} In April 2022, CSB became aware of conditions in Mother's home that again raised concerns for the child's well-being. Mother agreed to work with the agency on a voluntary basis to address those concerns. In June 2022, CSB closed its voluntary case after Mother improved the conditions in the home. At the end of the following month, however, CSB conducted a home visit and discovered that the conditions in the home had greatly deteriorated. Based on the unsanitary and unsafe conditions in Mother's home, CSB filed a complaint alleging that I.W. was dependent and neglected. Based on Mother's stipulation, the juvenile court adjudicated the child dependent. I.W. remained in Mother's legal custody under CSB's protective supervision until the juvenile court closed the case a year later.

{¶5} In October 2024, shortly after I.W. turned four years old, CSB removed both I.W. and then one-year-old R.W. from Mother's home and filed complaints regarding each child. As to I.W., the agency alleged that she was an abused, neglected, and dependent child. I.W. had disclosed that R.W.'s father ("Mr. W.") had touched her inappropriately in her "no-no areas." Mother admitted that Mr. W. and I.W. bathed together. Mother also allowed a registered sexual offender to stay in the home. Moreover, I.W.'s biological father is a registered sexual offender. In addition, the complaint alleged that Mother had failed repeatedly to follow through with appointments for both children who are medically fragile. As in the two prior complaints, CSB alleged that Mother had mental health issues that interfered with her parenting abilities. Mother admitted that she suffers from severe anxiety, depression, and stress-induced seizures, none of

which she was addressing in treatment. Finally, both children and Mother were infested with head lice.

{¶6} At the shelter care hearing, Mother stipulated to probable cause for the removal of the children whom the juvenile court placed in the emergency temporary custody of CSB. Mother waived her right to an adjudicatory hearing and agreed with the facts in the complaint that established I.W.'s dependency. The agency dismissed the remaining allegations.

{¶7} Mother did not appear for the initial dispositional hearing. CSB presented evidence that Mother lacked stable housing, reported suicidal ideations during the Christmas holidays a month earlier, and relapsed into crack cocaine use. The juvenile court placed I.W. in CSB's temporary custody and adopted the agency's case plan as an order. Mother's objectives required her to (1) attend all of the children's medical appointments, follow the therapeutic recommendations of the medical professionals, and demonstrate the ability to provide care as explained at appointments; (2) obtain a diagnostic mental health assessment and follow all recommendations arising therefrom; (3) participate in intensive level parenting classes and demonstrate the skills learned through healthy interactions with the children; (4) obtain a parenting evaluation and follow all recommendations arising therefrom; (5) obtain a substance use assessment, follow all recommendations, and submit to random drug screens; (6) demonstrate the ability to meet her own and the children's basic needs, and give the caseworker access to assess the home; and (7) execute all necessary releases of information.

{¶8} By the time of the first review hearing, Mother had left Summit County and moved to Cambridge, Ohio, in Guernsey County. She had made minimal progress on her case plan objectives. Because she had only recently provided verification that she was lice-free, the juvenile

court ordered that she could begin having in-person visits with the child for the first time in eight months.

{¶9} In advance of the one-year sunset date, Mother moved for a first six-month extension of temporary custody. CSB moved for permanent custody. The guardian ad litem notified the trial court of a conflict between her recommendation in I.W.'s best interest and the then five-year-old child's wishes. Therefore, the juvenile court appointed an attorney to represent the child.

{¶10} The matter proceeded to a permanent custody hearing as to I.W. Although the agency had originally sought to terminate parental rights as to R.W. too, CSB and the guardian ad litem supported an extension of temporary custody as to that child based on Mr. W.'s progress on his case plan objectives. Those issues were consolidated for hearing.

{¶11} At the conclusion of the hearing, the juvenile court denied Mother's motion for a six-month extension of temporary custody, granted CSB's motion for permanent custody, and terminated Mother's and Father's parental rights as to I.W. Mother timely appealed. In lieu of a merit brief, appellate counsel filed a brief on Mother's behalf pursuant to *Anders v. California*, 386 U.S. 738 (1967), and sought permission to withdraw from further representation of Mother in this appeal. Appellate counsel served Mother with a copy of the brief, and this Court's magistrate issued an order allowing Mother the opportunity to file a response. Mother has not responded.

II.

**<u>PROPOSED ASSIGNMENT OF ERROR</u>**

THE TRIAL COURT'S DECISION GRANTING [CSB'S] MOTION FOR PERMANENT CUSTODY OF THE MINOR CHILD WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SHOULD BE REVERSED.

{¶12} Mother's appellate counsel proposed one possible issue for review: whether the juvenile court's award of permanent custody was against the manifest weight of the evidence. Appellate counsel concluded that the proposed assignment of error lacks merit. Based on our full and independent examination of the record and proceedings, this Court agrees.

{¶13} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under Revised Code Section 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). The best interest factors include: the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in Section 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-(e); *see In re R.G.*, 2009-Ohio-6284, ¶ 11 (9th Dist.). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶14} Appellate counsel does not raise any issues regarding the trial court's findings as to Father. The record fully supports the juvenile court's finding that Father abandoned the child.

Moreover, he did nothing to demonstrate an interest in pursuing custody or any type of a relationship with I.W.

{¶15} As to the first prong of the permanent custody test, the juvenile court found that the child could not or should not be placed with Mother both because Mother had failed to remedy the concerns underlying the child's removal and because she demonstrated a lack of commitment to the child. R.C. 2151.414(B)(1)(a), (E)(1), and (E)(4). It is well settled that, while the agency may allege alternative first-prong grounds in support of its motion for permanent custody, it need only prove one. *In re P.W.*, 2023-Ohio-4830, ¶ 11 (9th Dist.), citing *In re T.B.*, 2020-Ohio-4040, ¶ 11 (9th Dist.). As the discussion below fully addresses Mother's lack of progress on her case plan objectives, the clear and convincing evidence supports the juvenile court's finding that Mother failed to remedy the underlying conditions precipitating I.W.'s removal from home. R.C. 2151.414(E)(1).

{¶16} Moreover, CSB proved the alternative basis for its first-prong allegation by demonstrating Mother's lack of commitment to the child. R.C. 2151.414(E)(4). Specifically, clear and convincing evidence showed that Mother never attended any of I.W.'s medical appointments during the case; attended only three in-person visits with the child; and focused almost exclusively on R.W. during all in-person and virtual visits, despite multiple attempts by I.W., the caseworker, and the guardian ad litem to encourage Mother's engagement with I.W. Accordingly, clear and convincing evidence supported the trial court's finding that the child could not or should not be returned to Mother's custody.

{¶17} Furthermore, CSB demonstrated that an award of permanent custody to the agency was in the child's best interest. I.W. was almost five and a half years old at the time of the hearing. By that time, she had spent 24 months in CSB's custody during the two cases where the agency

removed her from home, including the 15 months in agency custody in the instant case. When not in CSB's custody, I.W. was in Mother's legal custody.

{¶18} The child has developed a strong bond with her two married foster mothers, their five-year-old son, and nine-year-old daughter. The guardian ad litem reported that I.W. seeks out her foster mothers for comfort and refers to them as "Mama, and Mommy." The foster mothers have allowed the child and her foster mother from the 2020 case to remain in contact based on their established relationship. In addition, CSB moved R.W. to a foster home across the street from where I.W. resides with her foster family. As a result, the siblings see each other frequently and have developed a strong bond.

{¶19} I.W. recognizes Mother as her parent and has tried repeatedly to get Mother to interact with her. Mother appeared for only three in-person visits in 15 months and inconsistently appeared for scheduled virtual visits. The visits always included R.W. as well, and Mother focused her attention on him, ignoring I.W. for the majority of the 15-minute Zoom calls.

{¶20} I.W. wavered throughout the case on her stated desires regarding custody. The guardian ad litem reported that the child at times said she wants to live with Mother or Mr. W. Most recently, however, I.W. told the guardian ad litem that she wants to live with her foster parents, "Mama and Mommy[.]" The guardian ad litem opined that an award of permanent custody to CSB would be in the child's best interest. She based her opinion on the young child's need for safety and stability in a home focused on meeting her basic and special needs, Mother's lack of progress on her case plan objectives, as well as Mother's demonstrated lack of commitment to the child.

{¶21} After two removals from home, and three interventions by CSB during her short life, I.W. needs a legally secure permanent placement. The evidence demonstrated that Mother

was not capable of providing that for the child at the time of the hearing and would be unlikely to do so within a reasonable time.

{¶22} I.W. has multiple special needs, requiring recurring appointments with various specialists. The child sees a pulmonologist for asthma, a neurologist for seizures, and a trauma therapist for post traumatic stress disorder and disinhibited social engagement disorder. One of the foster mothers testified that I.W. has very poor safety awareness and must be watched as though she were a toddler. For example, the child has no inhibitions with strangers and would wander off with anyone; she puts nonfood items in her mouth; and she leaves the house on her own without appropriate attire for the weather. When she came into care, I.W. had severe mouth pain, requiring dental surgery to address an abscess and numerous cavities. She required a tooth extraction and caps on seven or eight teeth. In addition, when CSB removed the child from Mother's home, she had head lice that required intensive remediation.

{¶23} Because of the child's multiple special needs and medical conditions, many of which Mother had not properly addressed when the child was in her home, CSB required Mother to attend all of I.W.'s appointments and demonstrate an understanding of the child's needs. Mother failed to attend any of I.W.'s appointments in 15 months. In addition, she had only limited knowledge of the child's medical and therapeutic needs.

{¶24} As to her mental health case plan objective, Mother had a mental health assessment at Ever Well Community Health but never engaged in services. After repeatedly not being able to reach Mother, Ever Well terminated her services with them. Mother obtained a second assessment at Cedar Ridge, where she was diagnosed with a mood disorder. Mother was to engage in counseling, case management, and parenting classes at Cedar Ridge. Within a month, however, she ceased all services there. For the next seven months, Mother did nothing to address her mental

health and parenting education case plan objectives. She re-engaged with Cedar Ridge shortly before the permanent custody hearing but had not made any meaningful progress.

{¶25} Despite five scheduled appointments, Mother failed to appear for her parenting evaluation. Summit Psychological Associates discharged Mother and disallowed further appointments based on the multiple times she did not give notice that she would not attend.

{¶26} Mother made no better progress on her substance abuse objective. She tested positive for cocaine three times and admitted ongoing use. While she obtained an assessment at Guernsey Health Choices five months before the hearing, she did not follow through with the recommended intensive outpatient treatment and was discharged for noncompliance. She later engaged in services at Sparrow Health for a brief period before disengaging. The caseworker testified that Mother was not participating in any substance abuse services at the time of the hearing.

{¶27} Finally, CSB presented evidence that Mother was not able to meet the basic needs of I.W. Throughout the 15 months of the case, although she had a Section 8 housing voucher, Mother lived instead in eight different locations, sometimes in homes with relatives, friends, or a boyfriend; and once with another boyfriend in a motel. She broke up with both boyfriends after each became physically violent with her. She lived twice with her mother ("Grandmother"), leaving the first time after Grandmother used methamphetamine and held a knife to Mother, and leaving the second time after Grandmother kicked Mother out of the house. Mother had no stable housing where I.W. could safely reside with her.

{¶28} Mother received food stamps and $994 in disability income each month. While the caseworker believed that was adequate if Mother took advantage of her subsidized housing voucher and other community resources readily available in Cambridge, Mother made poor

choices when managing her money. For example, Mother used her entire monthly income to rent a room for herself and a boyfriend in a motel, leaving no money for other basic needs. While Mother lacked independent transportation, she had access to Provide-A-Ride to attend services. She declined to take advantage of that resource, as well.

{¶29} Significantly, due to her lack of consistent visitation and minimal interaction with the child when she did appear for visits, Mother demonstrated that she was not prepared to provide a nurturing environment for the child. Her failure to attend any of I.W.'s appointments prevented her from ensuring that the child's health and well-being would be addressed in Mother's home. Under the circumstances, CSB proved by clear and convincing evidence that Mother's lack of case plan compliance left her unable to provide a safe, stable, and appropriate home for the child.

{¶30} Upon review of the record, this Court agrees with Mother's appellate counsel that the juvenile court's judgment awarding permanent custody of I.W. to CSB is not against the manifest weight of the evidence. Accordingly, an evidentiary challenge does not present a meritorious and nonfrivolous issue for consideration on appeal.

III.

{¶31} Having independently and fully reviewed the record and having found that no appealable issues exist, this Court concludes that Mother's appeal is meritless and wholly frivolous pursuant to *Anders, supra*. Mother's appellate counsel's motion to withdraw from further representation is granted. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

SUTTON, J.
FLAGG LANZINGER, J.
CONCUR.

APPEARANCES:

RONALD T. GATTS, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and ASHLEE JAMES, Assistant Prosecuting Attorney, for Appellee.

HOLLY FARAH, Guardian ad Litem.